UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELRIC WOLFSBRUDER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

CASE NO. C17-37-BAT

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Elric Wolfsbruder seeks review of the denial of his Supplemental Security Income and Disability Insurance Benefits applications. He contends the ALJ erred in evaluating the medical evidence and the lay witness testimony. Dkt. 17. The Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Mr. Wolfsbruder is currently 44 years old, has a high school education and has worked as a systems analyst. Tr. 41, 67, 202. In August 2013, he applied for benefits, alleging disability as of November 1, 2009; he later amended his alleged onset date to February 14, 2012. Tr. 38, 202, 209. After his applications were denied, the ALJ conducted a hearing and, on July 31, 2015, issued a decision finding Mr. Wolfsbruder not disabled. Tr. 19-31. The Appeals Council denied

Mr. Wolfsbruder's request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found that Mr. Wolfsbruder had not engaged in substantial gainful activity since the alleged onset date; he had the following severe impairments: degenerative disc disease, sleep disorder, obesity, migraines, affective disorder, anxiety disorder, and somatoform disorder; and that these impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 21-22. The ALJ found that Mr. Wolfsbruder had the residual functional capacity to perform light work with some exceptions; he is able to understand, remember, and carry out instructions and tasks generally required by occupations with a Specific Vocational Preparation (SVP) of one or two; he can have occasional superficial interaction with the general public and is able to make adjustment to workplace changes generally associated with occupations with an SVP of one or two. Tr. 24. The ALJ found that Mr. Wolfsbruder was unable to perform his past work, but, as there were jobs that exist in significant numbers in the national economy that he can perform, he is not disabled. Tr. 29-31.

## DISCUSSION

**A.     Medical evidence**

Mr. Wolfsbruder argues that the ALJ improperly weighed the medical evidence by crediting the non-examining psychologists' opinions over the treating and examining source opinions, without providing specific and legitimate reason for rejecting the treating and

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

examining doctors' opinions.[3] Dkt. 17 at 3. In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester*, 81 F.3d at 830-31.

    *1.    Dr. Widlan*

David Widlan, Ph.D., examined Mr. Wolfsbruder in February 2012 and opined that Mr. Wolfsbruder had marked impairments in the ability to perform routine tasks without supervision, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting with even limited public contact, and maintain appropriate behavior in a work setting. Tr. 324. Dr. Widlan assigned a Global Assessment of Functioning score of 40, indicating some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. Tr. 323; Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed. text rev. 1994).

The ALJ gave Dr. Widlan's opinion little weight because Dr. Widlan did not have access to treatment notes and relied on Mr. Wolfsbruder's presentation during their one-time interview. Tr. 29. An ALJ may give less weight to a medical opinion that is based to a large extent on a

---

[3] Mr. Wolfsbruder presents arguments relating to the ALJ's assessment of his mental impairments only. The Court's decision reflects this distinction, addressing only the evidence relating to his mental impairments. The Court did not consider and does not disturb the ALJ's assessment of Mr. Wolfsbruder's physical impairments.

ORDER REVERSING AND REMANDING FOR FURTHER
ADMINISTRATIVE PROCEEDINGS - 3

claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But an ALJ does not provide adequate reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001). Dr. Widlan conducted a clinical interview and administered a mental status examination. He did not merely repeat Mr. Wolfsbruder's subjective statements. Rather, he relied on his clinical assessment to opine on Mr. Wolfsbruder's limitations. And Dr. Widlan did not discredit Mr. Wolfsbruder's complaints, noting instead that Mr. Wolfsbruder scored in the non-malingering range on the Rey test for malingering. Tr. 324. This was not a valid reason to reject Dr. Widlan's opinion.

The ALJ also found that Dr. Widlan's opinion was "inconsistent with the normal observations of the claimant, his activities, and his performance on mental status examinations." Tr. 29. This boilerplate language, which the ALJ used to reject all the treating and examining doctors' opinions, is general, nonspecific, and does not rise to the level required to reject a treating or examining doctor. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings . . . does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). The ALJ's repeated use of this boilerplate phrase is particularly troubling where the ALJ rejected all the treating and examining doctors' opinions and relied solely on the non-examining doctors' opinions. This rote language does not suffice to reject an examining doctor's opinion.

Because the ALJ failed to provide a legally sufficient reason to reject Dr. Widlan's opinion, the ALJ erred in rejecting the opinion. The Court concludes that this error was

prejudicial to Mr. Wolfsbruder and was therefore harmful. *See Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).

   2.   *Dr. Anderson*

Kathleen Anderson, M.D., examined Mr. Wolfsbruder in March 2014 and opined that he would have significant difficulties in an employment situation, including marked difficulty in focusing on tasks and completing tasks in a timely fashion, maintaining appropriate involvement with others in the workplace, and in handling stress, although she was unsure if his presentation during the examination was an accurate reflection of his symptomatology and abilities. Tr. 451.

The ALJ gave the boilerplate language discussed above as the sole reason to reject this opinion. Tr. 28. As with Dr. Widlan's opinion, this general, nonspecific reason does not rise to the level required to reject an examining doctor's opinion. *Embrey*, 849 F.2d at 421-22. Although the Commissioner emphasizes Dr. Anderson's expressions of concern and hesitancy in her opinion, the ALJ did not rely on these statements as a reason to reject the opinion, making the Commissioner's suggested reasons improper post hoc rationalizations that the Court cannot rely on to affirm the ALJ's findings. *See Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001).

Because the ALJ failed to provide a legally sufficient reason to reject Dr. Anderson's opinion, the ALJ erred in rejecting the opinion. This error was prejudicial to Mr. Wolfsbruder and was therefore harmful. *See Stout*, 454 F.3d at 1055.

   3.   *Dr. Corbin*

Shannon Corbin, M.D., a treating psychiatrist, wrote a letter in April 2015 that discussed the course of Mr. Wolfsbruder's treatment, his diagnoses, and the impact of his symptoms on his functioning. Tr. 588-90. She opined that his PTSD symptoms alone would make it incredibly

difficult for him to seek or retain work and that his psychiatric and physical conditions, taken together, made it impossible for him to work in the foreseeable future. Tr. 590.

The ALJ gave Dr. Corbin's opinion little weight, finding that her suggestion that Mr. Wolfsbruder could not work was an opinion on an issue reserved to the Commissioner. Tr. 28-29. An opinion on an issue reserved to the Commissioner, such as an opinion that a claimant is "disabled" or "unable to work," is not a medical opinion and is not entitled to any special significance. 20 C.F.R. § 404.1527(d). The ALJ properly disregarded this portion of Dr. Corbin's opinion. But the fact that her opinion included an opinion on an issue reserved for the Commissioner does not support the ALJ's rejection of the entire opinion.

The ALJ also found that Dr. Corbin described no particular functional limitations or explain why Mr. Wolfsbruder would be unable to perform simple work with some limitation on social activities. Tr. 29. This finding is unsupported. Although Dr. Corbin discussed symptoms and treatment of PTSD and bipolar disorder generally, she tied specific symptoms to Mr. Wolfsbruder, and discussed the impact of these symptoms on functioning. For example, Dr. Corbin stated that Mr. Wolfsbruder was significantly impacted by nightmares and sleep disruption, and that these symptoms can make it incredibly challenging if not impossible to interact appropriately with others. Tr. 588-89. It was not Dr. Corbin's role, as a treating psychiatrist, to opine on Mr. Wolfsbruder's ability to perform work with a specific vocational profile. She opined as to the effect of his impairments on his functioning. The fact that she did not use vocational terms is not a valid reason to reject her opinion.

Finally, the ALJ again used the boilerplate language discussed above to reject this opinion. Tr. 29. The Court again rejects it as a valid reason to reject this treating doctor's

opinion. The ALJ failed to provide a legally sufficient reason to reject Dr. Corbin's opinion. This error was prejudicial to Mr. Wolfsbruder and was therefore harmful. *See Stout*, 454 F.3d at 1055.

   *4.   Non-examining state agency psychologists*

The ALJ gave "some weight" to the consulting doctors' opinions that Mr. Wolfsbruder could perform simple and familiar complex tasks with reasonable concentration, persistence, and pace. Tr. 28. Mr. Wolfsbruder argues that the ALJ erred by failing to consider how well the doctors explained their opinions and whether the doctors considered all of the pertinent evidence. Dkt. 17 at 11. He asserts that the consulting doctors' opinions contain little to no explanation and did not have the benefit of the reports of Dr. Anderson and Dr. Corbin, which were made after the consulting doctors gave their opinions. *Id.* at 11-12. Mr. Wolfsbruder's argument here is primarily a disagreement with the weight the ALJ gave to these factors; he does not show that that ALJ failed to consider them.

However, as Mr. Wolfsbruder points out in asking the Court to direct the ALJ to order a consultative examination, the ALJ rejected all the treating and examining doctors' opinions without providing valid reasons and gave only "some weight" to the consulting doctors' opinions—leaving the basis for the ALJ's residual functional assessment unclear. Dkt. 17 at 14. The opinions the ALJ erroneously rejected are all generally entitled to more weight than the opinions the ALJ gave some weight to, and the ALJ did not fully credit any opinions. The ALJ's RFC finding is thus both legally deficient and not supported by substantial evidence. The Court concludes that a full reweighing of the medical opinion evidence is necessary. On remand, the ALJ must reevaluate the weight to give to the consulting doctors' opinions along with his reevaluation of the treating and examining doctors' opinions in formulating a new RFC.

*5. Duty to develop the record*

Mr. Wolfsbruder argues that because the ALJ rejected all opinions from treating and examining doctors and gave only "some weight" to the consulting doctors' opinions, the ALJ had a duty to develop the record by calling a medical expert or consultative examiner. Dkt. 17 at 14. The ALJ's duty to develop the record is triggered only when there is ambiguous evidence or when the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ may develop the record by ordering a consultative examination, but the Commissioner has "broad latitude" in deciding whether to do so. *Reed v. Massanari*, 270 F.3d 838, 841-42 (9th Cir. 2001). Because the Court is remanding this case for the ALJ to reevaluate the weight to give to the medical opinions, the Court declines to order the ALJ to develop the record in any particular manner. The ALJ should, as in every case, consider whether the opinion of a medical expert or consultative examiner would be necessary and appropriate on remand.

**B.  Lay witness**

Mr. Wolfsbruder argues that the ALJ improperly rejected the testimony of his wife, Treebyleaf McCurdy. Dkt. 17 at 16-17. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into account, unless the ALJ expressly determines to disregard such testimony and gives specific, germane reasons for doing so. *See Stout*, 454 F.3d at 1053. Ms. McCurdy testified at the hearing and completed a third-party function report. The ALJ found her hearing testimony "somewhat persuasive," and gave weight to her testimony that while Mr. Wolfsbruder does not intentionally embellish things, his reality is based on his feelings, which change throughout the day, and he will say and believe whatever he thinks the listener wants to hear. Tr. 27. The ALJ gave little weight to her function report, however, finding that her

allegations were "inconsistent with the claimant's physical examination findings, his minimal treatment, the lack of significant complaints, the gaps in the treatment record, and his activities." Tr. 27.

Mr. Wolfsbruder argues that the ALJ used boilerplate language to reject Ms. McCurdy's function report and gave reasons that pertained only to her statements about his physical impairments, thus failing to provide specific, germane reasons to reject her statements about his mental limitations. Dkt. 17 at 19. The Court agrees. The ALJ again used boilerplate language, only slightly different in wording from the boilerplate he used to reject the medical opinions. And to the extent he rejected Ms. McCurdy's statements as inconsistent with physical examinations, this reason does not extend to her statements about Mr. Wolfsbruder's mental limitations. The ALJ failed to provide a specific, germane reason to reject Ms. McCurdy's opinion. This error was prejudicial to Mr. Wolfsbruder and was therefore harmful. *See Stout*, 454 F.3d at 1055.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall reevaluate the medical opinion evidence and the lay witness evidence. The ALJ shall further develop the record, reevaluate the evidence, and redo the five-step disability evaluation as the ALJ deems necessary and appropriate.

DATED this 28th day of August, 2017.

BRIAN A. TSUCHIDA
United States Magistrate Judge